CASE 32—PETITION EQUITY—MAY 10.

# City of Newport v. Newport and Cincinnati Bridge Company.

### APPEAL FROM CAMPBELL CHANCERY COURT.

1. INJUNCTION OF PROSECUTIONS UNDER VOID ORDINANCE.—If a city ordinance is invalid, one who is affected by it has the right, in order to prevent irreparable injury, and a multiplicity of prosecutions, to go into a court of equity for relief.

2. CITY ORDINANCE CONSTITUTING CONTRACT WITH BRIDGE COMPANY. —A city ordinance granting to a bridge company the use of a street for the purpose of its bridge, and providing that, in consideration of the grant, tolls should be as fixed in the ordinance, constituted an enforceable contract between the bridge company and the city; but the city had no power to pass an ordinance imposing a penalty upon any agent of the company who should violate the contract.

3. A CITY CAN NOT ENFORCE ITS CONTRACTS BY PENAL ORDINANCES in cases which do not involve the morals, health or safety of the people. It must resort to the courts for relief in the same manner as individuals.

4. SUBSTANTIAL COMPLIANCE WITH CONTRACT.—Where a city ordinance, which constituted a contract between the city and a bridge company, provided that the company should sell "packages of one hundred tickets to foot passengers for one dollar to all persons applying for the same," the sale by the company of five cards for one dollar, each card being good for twenty crossings, and one perforation being made in it upon each crossing, was a substantial compliance with the contract.

5. CONCLUSIVENESS OF JUDGMENT.—In this action to enjoin the enforcement of an ordinance imposing a penalty upon any agent of the bridge company who should refuse to sell one hundred tickets for one dollar, it was not necessary to construe the contract, the ordinance being invalid in any event; but, under the pleadings, a judgment holding that the issual of the five cards was a compliance with the spirit of the contract, would be binding on the city in any case where it would have the right to sue the company.

E. W. HAWKINS FOR APPELLANT.

1. Appellee's device of issuing five coupons, good for twenty crossings each, is not a compliance with the ordinance requiring it to deliver

Vol. 90—13

"packages of one hundred tickets to foot passengers for one dollar to all persons who apply for the same."

2. Appellant has the right to prosecute the agents of appellee who refuse to comply with the ordinance.

RAMSEY, MAXWELL & RAMSEY FOR APPELLEE.

1. Injunction is the proper remedy. (Brown v. Trustees, 11 Bush, 435; High on Injunctions, sec. 1247; Port of Mobile v. L. & N. R. Co., 4 South. Rep., 106.)

2. The contract of a municipal corporation is to be enforced like the contract of a private person by the courts, and in the absence of express legislative authority such a corporation can not enforce its own construction of its own contract by pains and penalties.

3. The city of Newport could not change or regulate fares upon the bridge  Indeed, the Legislature itself would not have this power, as the charter fixes a maximum rate which the company may charge. (Keith v. Hamilton, 5 Bush; Railroad Company v. Yazoo Co., 62 Miss., 607; 116 U. S., 330.)

4. The appellee complied in good faith with the requirement of the contract as to the sale of tickets.  The mere form of ticket is immaterial.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, the Newport and Cincinnati Bridge Company, was incorporated in 1868.  Its charter authorized it to charge reasonable tolls, the *maximum* rate, however, not to exceed that charged by the Covington and Cincinnati Bridge Company.

Desiring the use of a portion of one of the streets of the appellant, the city of Newport, for the purpose of constructing its bridge or the approach to it, the city council, on May 12, 1868, passed "an ordinance granting the Newport and Cincinnati Bridge Company the use of a portion of a street for the purpose of a bridge," the fourth section of which provides:

'In consideration of the foregoing grant, the rates of toll over said bridge shall be as follows, viz: Packages of one hundred tickets to foot passengers for one dollar to all persons applying for the same; one horse

and dray, ten cents for a single crossing ; one horse and express wagon, ten cents ; one horse and buggy, fifteen cents.''

The bridge company accepted the terms of this ordinance in the construction of its bridge. There is nothing in it relating to tolls for foot passengers, save the provision relating to the sale of packages of one hundred tickets for one dollar. The other rates for a foot passenger charged by the company are: three cents for a single crossing ; two and a half cents each way to go and return ; or he can·purchase what are termed seven and twenty coupon crossings, entitling him to cross the one seven and the other twenty times for ten and twenty-five cents, respectively.

In, and perhaps prior to, 1882 the bridge company, instead of furnishing packages of one hundred tickets for one dollar, began issuing packages of five cards for that price, each card being good for twenty crossings, and one perforation being made in it upon each crossing.

The city council, in the year last named, passed an ordinance subjecting any officer or agent of the bridge company to a fine for failing or refusing to sell packages of one hundred tickets for one dollar ; and one of the company's agents having been arrested, charged with its violation, and the city threatening to have arrested, and to prosecute, all of the company's agents until it should furnish and sell packages of one hundred tickets for a dollar, it brought this action enjoining the city from enforcing the ordinance. The lower court perpetuated the injunction. If the ordinance was invalid, then the company had the right, in order

to prevent irreparable injury, and a multiplicity of prosecutions, to go into a court of equity for relief.

The chancellor often interferes to prevent an illegal use of power by municipal authorities; and where such consequences follow the enforcement of an ordinance as will result in this instance, a proper case is presented for equitable relief, if the ordinance be invalid. (Brown v. Trustees of Catlettsburg, 11 Bush, 435.)

The passage of the ordinance of May 12, 1868, was the tender of a grant by the city to the bridge company upon the condition that the tolls should be as therein fixed. Upon its acceptance by the company, a contract arose between it and the city, and such a contract must be enforced by the judicial department of the government. It stands upon the same footing as one between individuals. It would be exceedingly dangerous to individual right and liberty, which the common law so highly regards, to permit municipalities to enforce their own construction of their contracts by pains and penalties. Whether the Legislature could confer such a power we need not inquire, inasmuch as it is not pretended that it has been attempted in this instance.

Where an ordinance is penal in character, the right of .the municipality to enact it must clearly appear. The enforcement of this ordinance would not be an exercise of the police power. While it is difficult, if not impossible, to concisely define the extent of this power, yet it certainly should not be extended so far as to permit a city to enforce its view of its contracts by penal ordinances in cases involv-

ing neither the morals, health or safety of its people. It may, by ordinance, limit the speed of railroad trains or street cars through its streets, and in the same manner regulate any matter which is conducive to the health or safety or morality of its citizens. The public welfare demands the existence of such a power, and, when properly directed, the municipality should not be restricted to a narrow limit in its exercise. But where it is a matter of contract, affecting merely the pockets of its citizens, or it financially, it must resort to the courts for relief in the same manner as individuals.

A construction of the contract between the parties was not necessary in order to afford the appellee proper relief. This was given by enjoining the enforcement of the ordinance. Its petition, however, asks that the issual of the five card packages be adjudged a compliance with the clause in the ordinance relative to the one hundred ticket packages, while the answer of the appellant not only asks a dissolution of the injunction, but, in counter-claim form, requests the court to order the appellee to furnish and sell packages of one hundred tickets for a dollar. The lower court determined this question, holding that the issual of the five cards was a compliance with the spirit of the contract; and as this judgment would be binding upon the city in any case where it would have the right to sue the company, it is proper to consider it.

The law looks to the spirit of a contract, and not the letter of it. The question, therefore, is not whether a party has literally complied with it, but whether he

has substantially done so.   The ordinance in question was not designed to enable persons to purchase tickets for resale at an advanced price.   The statute prohibited any such traffic.   Its object was a commutation of fare to those who desired to cross the bridge frequently. The mere form of the ticket is immaterial.   The purpose was to regulate the price for one hundred crossings, and the issual of the five cards, each good for twenty crossings, for one dollar, was a substantial compliance with the contract.

Judgment affirmed.